## Arnold and Pinckard *v.* Hamer *et al.*

Upon the death of one of several partners a joint creditor has no claim for the payment of his debt out of the separate estate of the deceased partner until the claims of the separate creditors have been first satisfied.

Where the *equities* of creditors are equal, but one has a *legal* priority, the latter will prevail.

Where the assets of a partnership are purely equitable, and the surviving partner is insolvent, the claimants will take *pari passu.*

A court of probate cannot take jurisdiction of the conflicting rights and remedies of creditors of an estate in the course of administration before it.

The power of marshalling the assets of an insolvent estate between separate and partnership creditors, belongs exclusively to a court of chancery.

The bill states that Charles A. Weston died in 1837, in the county of Yazoo, leaving a large estate of personal property. That prior to his death he had been engaged in farming and the sale of merchandise in the county of Holmes; and that for two or three years before his death he had, in connexion with one James W. Exum, been engaged in retailing merchandise at Manchester, in Yazoo county, under the firm name of Weston & Exum. That at the February term, 1837, of the probate court of Yazoo county, letters of administration on the estate of Charles A. Weston were granted to defendants Hamer and Blue. That the personal estate of said Weston, held by him individually and independent of the firm property, consisted of notes, bills, accounts, bank stock, cash, slaves, horses, &c. to the value of one hundred and four thousand four hundred and eighty-four dollars. That orders from said probate court had been obtained for the sale of the lands of said Weston, the proceeds of which sale amounted to ten thousand nine hundred and forty-six dollars. That at the June term, 1838, of said court, said Hamer and Blue reported said estate insolvent, and appointed defendants Harris, Fitch, Battaile, Mount, and Hale, commissioners of insolvency. That the claims which have been filed with said commissioners against the estate of Weston, which were his individual debts, amount to seventy-one thousand eight

43*

hundred and twenty-three dollars and eighty cents, and those filed of the debts of Weston & Exum amount to eighty-five thousand two hundred and ninety-five dollars and eighty cents, and were filed by defendants Staunton & Buckner, Wood, Johnson, and Burrett, and the Commercial Bank of Manchester. The bill charges that the last mentioned defendants are seeking to divide the estate of Weston *pro rata* with his individual creditors. Complainants state that their claim is an individual one, amounting to twelve thousand three hundred and sixty-two dollars. That before the estate of Weston had been reported insolvent there had been payments of entire claims by said administrators, and that three interlocutory settlements had been made with the probate court, &c.

The bill prays a discovery of Hamer and Blue, administrators of the lands of the estate of said Weston, if any remain unsold. The bill further states that there is a balance of cash in the hands of Hamer and Blue, as administrators, which they have not paid out, a portion of which was received in Union money, in the years 1840 and 1841, and that it was used by them for their own private purposes, at par. That the partnership creditors are pressing their claims before the commissioners of said court, and insist that they have a right to share the assets of Weston, *pari passu* with his individual creditors, and that complainants are fearful that commissioners will report without noticing the character of the claim.

The bill prays for an injunction restraining the said commissioners from reporting, and that a special commissioner of this court be appointed to audit and allow the separate claims against the estate of said Weston. The bill further prays that defendants Hamer and Blue, administrators, be called to and compelled to account in this court, and that the balance, upon settlement, be ordered to be paid to the individual creditors of said Weston, and if there is a surplus then the surplus to be paid to the firm creditors, &c. and for general relief. To this bill there is a general demurrer.

HENRY W. BROWN for the demurrer.

The defendants demurring are the administrators of Charles A.

Weston, deceased, and the commissioners of insolvency. It is contended for the administrators that the bill should be dismissed as to them because the chancery court has no original jurisdiction of the subject matter of the bill, but that the same belongs exclusively to the probate court of Yazoo county. There is no charge in the bill against them, upon which there can be any pretence to claim the interference of this court.

The bill charges that defendants, Hamer and Blue, have taken out letters of administration; that an inventory of the personal estate has been returned, and a sale and return of the real estate, and that the estate has been reported and declared insolvent. That prior to the report of insolvency, some entire debts were paid by the said administrators, and that they have made three several annual interlocutory settlements, and their bill shows that they (the administrators) have proceeded in a due course of administration under the exclusive jurisdiction and direction of the probate court, and the administrators now insist that they have a right to proceed to a final settlement and conclusion of their administration, under the jurisdiction and direction of said court, and that they may not be compelled to undergo the enormous expense and trouble of accounting and concluding their administration in the chancery court.

In all cases of concurrent jurisdiction, the court which first exercises it, must decide finally; and even if complainants have shown such a case as would authorize concurrent jurisdiction, the form cannot now be changed. See 5 How. R. 80, Green *v.* Robinson.

The jurisdiction of the probate court is exclusive over the matters confided to it by the constitution. See 2 How. R. 856, Blanton *v.* King; Carmichael *et al. v.* Browder; 3 How. 252.

If the administrators have made any entire payments before the estate was reported insolvent, the probate court has full power to allow or disallow such payments.

The powers of the probate court, so far as its jurisdiction extends, are as ample as those of a court of chancery. See 3 How. R. 252, Carmichael *et al. v.* Browder.

As to the commissioners of insolvency, they are officers of the probate court, and the probate court has a supervisory jurisdiction

over them; and if they should make a report which is not consistent with the rules of law, the administrator or creditor may except, and have the same referred, and the right of appeal is given from the probate court.  See How. & Hutch. Dig. 410.

BATTAILE on same side.

The following questions arise in the case:

1. Has this court jurisdiction over the subject?

2. Had the complainants any pretext for applying to this court for its interference and aid, when the commissioners of insolvency had not reported adversely, and before the probate court had had the question referred to it?

3. Are all partnership debts joint and several; and have the individual creditors a prior lien on the individual estate in preference to the partnership creditors, unless they show the partnership effects to be sufficient to discharge the partnership creditors?

As to the first point.  The jurisdiction over the subject matter of the bill properly belongs to the probate court.  "The probate court has the unquestionable right to decide all probate matters," &c.   Gildart's Heirs *v.* Starke, 1 How. R. 450; Constitution of Mississippi, Judicial Department.

"The jurisdiction of the probate court is exclusive over the matters confided to it by the constitution."   Blanton *v.* King, 2 How. R. 856; Carmichael *et al. v.* Browder, 3 How. R. 252.

"The powers of the probate court, so far as its jurisdiction extends, are as ample as those of the court of chancery."   Id.

"The court of chancery has no authority to revise the proceedings of the probate court."   Id.

As to the second point.  So far as the bill seeks to give the separate creditors of Weston a claim to his separate estate prior to that of the partnership creditors, it shows no equity to entitle complainants to the interference of this court; because, for any thing that is shown, the probate court might have so decreed, the commissioners not having reported adversely to this principle, and the probate court not having made any order upon this question.  The complainants cannot prosecute their supposed rights in two courts at the same time: and having submitted the question to a court

of competent jurisdiction they must await and abide by its decisions.

And as to the third point. All promises, contracts and liabilities of co-partners are joint and several in law and equity. The act of 1836 provides that, "all promises, contracts, and liabilities of co-partners, shall hereafter be deemed and adjudged joint and several." How & H.'s Dig. 595. See also Rice v. Shute, 5 Barr. 2611–13; Sleeche's Case, 1 Mer. 565; Devaynes v. Noble, 1 Mer. 529; same case, 2 Mylne and Keene's R. See Lord Brougham's opinion in this last case. Sumner v. Powell, 2 Mer. 37; Stephens v. Chiswell, 3 Ves. 566; 1 Story's Equity, 626, note 1. See further upon this point, Hammersly. v. Lambert, 2 J. C. R. 508; Tuckens v. Oxley, 5 Cranch's R. 34–40; Lyons & Gilmore v. Hamilton, 1 How. R. 474; Fairchild v. Grand Gulf Bank, 5 How. R. 597.

Partnership creditors have an equal claim in law and equity to the separate estate of a deceased partner, with his separate creditors; especially where it appears that the partnership assets have been exhausted, or the surviving partner to be insolvent; partnership contracts being considered joint and several. Act of 1836, How. and Hut. Dig. 595; Lyons & Gilmore v. Hamilton, 1 How. Rep. 474; Fairchild v. Grand Gulf Bank, 5 How. 597; Devaynes v. Noble, 1 Mer. 529; same case, 2 Mylne & Keene's Rep. Lord Brougham's Opinion; 1 Story's Eq. p. 626, note 1, and authorities there cited; Tucker v. Oxley, 5 Cranch's Rep. 34, 40; Bell et al. v. Newman, administrator, &c. 5 Serg. & Rawle, 78; Hammersly v. Lambert, 2 John. Chan. Rep. 508; Sleech's case, 1 Mer. 565; Sumner v. Powell, 2 Mer. 37; Stephens v. Chiswell, 3 Ves. 566; Colyer on Partnership, 337 to 347; Contra, 3 Kent's Com. 64, 65; 3 Paige's Rep. 167; Hall v. Hall, 2 McCord's Chan. Rep. 302.

The bill does not charge that there are any partnership assets unexhausted, or ask of this court to compel the partnership creditor to resort to the partnership fund and exhaust it, before they should seek payment, or a *pro rata* distribution out of the separate estate of Weston; for the best reason, because complainants knew that the partnership assets were long since exhausted, and that the surviving partner was insolvent.

It will be perceived that the statute of 1836 not only establishes

a new rule in pleading against partners, but puts to rest all doubt about the true nature of partnership contracts, by unequivocally declaring them, in law and equity, joint and several. There are *two distinct sections* in the statute, one changing as declaring the nature and character of such contracts, the other changing the rule of declaring and pleading.

If partnership contracts are several as well as joint, as contended for, then the demurrer must be sustained and *the bill dismissed as to the partnership creditors.*

WILKINSON & MILES contra.

The first question arising under the demurrer is, has this court jurisdiction? It most certainly has. Whilst we do not question the law of the cases referred to in 1 Howard Rep. 450; 2 Ib. 856; 3 Ib. 252, we insist they furnish no authority for this case. There is no doubt that the probate court is invested with full and complete authority over all matters within the legitimate scope of its jurisdiction. But is the question of law raised by the bill either a matter testamentary, of administration or orphan's business? It is not. It is a mere question of equity; and the rights of complainants can only be worked out through the equities of the parties (partners.) No other than a court of equity can give relief in such a case; and had the probate court decreed in favor of complainants, its decree would have been void for want of jurisdiction.

The second position assumed by defendants is wholly untenable. As before stated, the probate court had no jurisdiction over the question presented by the bill. It could not turn aside from its ordinary course of procedure to look after the mere equities of third persons. The commissioners of insolvency nor the probate court could take cognizance of a matter wholly without the range of their legitimate duties. And it is a mistake of defendants' counsel in saying that we are prosecuting our claim in two courts at the same time. All proceedings in the probate court are stayed by injunction. The question never has been submitted to any court save this.

The third position assumed by defendants raises the only point in the case. The law is too well settled to be questioned at this

day that partnership creditors are in equity entitled to payment out of the partnership assets in preference to individual creditors of the separate members of the firm.   See 2 Swanston's Rep. 575; 1 Vesey, 239, 455; 6 Vesey 126–7–8; 3 Mason's Rep. 312–13; 5 John. Ch. Rep. 60; 4 Vesey, 396; 15 Vesey, 557.

Will it not follow as a necessary consequence that the separate creditors of an individual member of a firm are entitled to payment out of his separate estate in preference to partnership creditors?   On principle, in the absence of all authority, we do not think the court would hesitate so to declare the law.   But we are not driven to principle alone to sustain this position.   The controlling power of directly adjudged precedent, repeatedly declared by judges eminent for their great learning and clear discrimination, has settled this question beyond doubt or controversy.   See Grey *v.* Chiswold, 9 Vesey, 118; Carey on Partnership, 119; 3 Kent's Com. 65; 1 Story's Eq. 625; 20 Martin's La. Rep. 599; Collyer on Partnership, 473, 477; 16 John. Rep. 106; Fox *v.* Hanbury, Cowp. Rep. 445; Tappan *v.* Blaidsell, 5 New Hampshire Rep. 190; Church *v.* Knox, 2 Conn. Rep. 514; Brewster *v.* Hammet, 4 Conn. Rep. 540 ; Barber *v.* Hartford Bank, 9 Conn. Rep. 407 ; Dorer *v.* Stauffer, 1 Penn. Rep. 198; Knox *v.* Summers, 4 Yeats' Rep. 477; 3 Paige, 167; 17 Vesey, 520; 1 Story's Eq. 569; Hall *v.* Hall, 2 McChord's Ch. Rep. 302.

This is unquestionably the law, unless changed by our statute of 1836.   That act makes all partnership contracts joint and several.   But does that act charge the equities of the joint and several creditors?   We think not.   The object and intention of the act is confined to the remedy for the collection of partnership contracts. It gives the owner of the claim his election to sue one or all of the members of the firm.   But it does not change the equities of those who have given credit to the firm, or to separate individuals of the firm.

Heretofore we have argued this demurrer as to the joint creditors of Weston & Exum.   So far as the commissioner of insolvency and the administrators are concerned, we deem it unnecessary to say any thing.   No relief is asked against the commissioners. And the administrators are called on to discover whether they have sold all the land of which Weston died seized; and to dis-

cover if they did not apply the Union Bank notes collected by them to their individual uses.

THE CHANCELLOR.

There are two leading questions presented by the demurrer. The first is a question of jurisdiction between the court of chancery and the probate court. The second relates to the rights of the joint and separate creditors of persons composing a partnership. The latter will be first examined. I consider the law well settled upon principles of equal justice and solid reason, that upon the death of one of several partners, a joint creditor has no claim for the payment of his debt out of the separate estate of the deceased partner, until the claims of the separate creditors have been first satisfied. It is true that joint creditors may come into equity to enforce their claim against the estate of a deceased partner, and equity will then consider the claim, as it is considered at law, both joint and several; but this can only be done where the claims of the joint creditors do not come in conflict with those of the separate creditors. In such case the priority of the separate creditors is always preserved. Upon the death of one partner the claim of joint creditors survives against the surviving partner, and is extinguished at law against the estate of the deceased partner, to which they can only resort through the aid of a court of equity, where the advantage thus thrown by accident upon the separate creditors will be preserved. And in such case it makes no difference that the surviving partner is insolvent, if the assets to be administered are purely legal; the separate creditors having acquired a priority at law, and having equal equity, that priority will be preserved. For where the equities are equal the legal right must prevail. A different rule obtains where the assets are purely equitable, and where therefore, both joint and separate creditors would have to seek the aid of a court of equity. In such case neither party having a legal preference, and the surviving partner being insolvent, the claimants would be decreed to take *pari passu.* It may, I think, be hence laid down, that in administering upon the legal assets of an insolvent partner, his property should be applied to the payment of his private debts, and partnership claims should not be reported for a *pro rata* dividend. These general rules and

Pinckard and Arnold *v.* Hamer *et al.*

principles are, I think, fully sustained by the authorities which I have consulted. They will be found in the cases of Wilder *v.* Keeler, 3 Paige, Ch. R. 167. McCulloh *v.* Dashiell's Administrator, 1 Har. & Gill, 96. Hall *v.* Hall, 2 McCord, Ch. R. 302. Ridgley *v.* Carey, 4 Har. & McH. 167; Morgan *v.* His Creditors, 20 Martin's Rep. 599; 3 Kent's Com. 64, 65. I may here remark, that I do not think the statute of this state, in relation to the distribution of insolvent estates, has any bearing upon this case. That statute does not in any way interfere with or change the legal rights of separate and partnership creditors. The rules upon that subject still stand where the common law has placed them.

Upon the question of jurisdiction I have much more difficulty. The decisions of the High Court of Errors, whilst they lay down a very broad and comprehensive jurisdiction on the part of the probate court over testamentary matters, seem to admit that questions may arise in connection with the administration of an estate which would be proper for the decision of a court of chancery. These admissions furnish no very definite idea, as to the jurisdiction of the court touching such matters. I must therefore continue to speculate as to what the excepted questions are, until the High Court of Errors shall lay down some rule that will furnish some more safe and certain guide. One of the cardinal rules upon which this court takes jurisdiction, and one which, perhaps, is less liable to mislead than any other, is, that a plain, adequate and unembarrassed remedy can not be had in the case in any other court. It has not, I believe, been contended, even by the broadest latitudinarian for probate court jurisdiction, that that court could settle and adjudicate upon the conflicting rights and remedies of creditors of an estate which was in the course of administration before it. Suppose the case of a creditor holding a mortgage upon an insolvent estate, which was before commissioners, who rejected his claim to priority, and reported him as only entitled to be paid *pari passu* with simple contract creditors. Would not this court injoin the commissioners from reporting in favor of the simple contract creditors, until the mortgage lien was first paid and discharged? Could the probate court give the mortgagee an adequate remedy in such case? I think not. The question of who are creditors, and what sum shall be allowed to each, are questions

referred exclusively to the commissioners, and their report is, I take it, conclusive upon the case. It can do nothing but simply order distribution and payment among the creditors according to the report. How. & H. 409, sec. 80. It will thus be seen that the mortgagee in such case would be wholly remediless unless through the interposition of this court.

The case before me is entirely analagous in principle to the one supposed. The complainants claim as the separate creditors of an insolvent estate; the defendants claim as the joint creditors of a partnership firm, of which the intestate was a member. I have already shown that the complainants, as separate creditors, have a priority at law, and an equal equity with the joint creditors. It is to preserve that priority that entitles the complainants to come into this court, where the party having the legal right with equal equity will always prevail. This constitutes an exception to the maxim, that equality is equity, in acting upon which the court turns the scale in favor of the party having the legal right.

The bill in this case is then to be regarded as a bill to marshal the assets of an insolvent estate, between separate and partnership creditors ; an object involving the exercise of one of the most ancient branches of equity jurisdiction, presenting questions of priority and conflicting rights among creditors, to the adjustment of which the probate court is wholly inadequate. For if the commissioners of insolvency were permitted to report in favor of the joint creditors, I conceive the probate court would be bound under the law to declare them entitled to a *pro rata* dividend.

I am accordingly of opinion the demurrer must be disallowed.